# 24-695,
## 24-1434, 24-1439, 24-1443

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

IN RE: NEW YORK CITY POLICING DURING SUMMER 2020
DEMONSTRATIONS

THE PEOPLE OF THE STATE OF NEW YORK, ADAM GRAY, JARRETT
PAYNE, KAYLA ROLON, COREY GILZEAN, MICHAEL HERNANDEZ,
CHRISTOPHER HUSARY, KEITH CLINGMAN, JONATHAN PECK, JASON
DONNELLY, DIANA ZEYNEB ALHINDAWI, JEMELL D. COLE, AMR
ALFIKY,
*Plaintiff-Appellees*,

v.

BILL DE BLASIO, CITY OF NEW YORK, DERMOT F. SHEA, TERENCE A.
MONAHAN, LARS FRANTZEN, FIERRO, JON BRODIE, PICHARDO,
(*Caption Continued on Inside Cover*)

On Appeal from the United States District Court for the Southern District of New
York, No. 1:20-cv-8924, Hon. Colleen McMahon

### REPLY BRIEF FOR INTERVENOR-DEFENDANT-APPELLANT POLICE
### BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.

BRIAN A. KULP
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2290
brian.kulp@dechert.com

STEVEN A. ENGEL
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3512
steven.engel@dechert.com

*Counsel for Intervenor-Defendant-Appellant*
*Police Benevolent Association of the City of New York, Inc.*

ALTAMIRANO, ROBERT DIXSON, SCOTT HALDEMAN, EDUARD
LUCERO, BRITNEY OWENS, HEMME, ANTHONY POLANCO, ERIK
RODRIGUEZ, PATRICK GROSS, LUIS E. ORTIZ, N. CANALE, MIGUEL
CRUZ, JOSEPH A. TAYLOR, NEW YORK POLICE DEPARTMENT,
THEODORE WELLS, JOHN DOES 1-38, JANE DOES 1-38, SEAN P.
ROBINSON, BRIANNA CARLO, NICHOLAS TERRETT, LUIGI TIRRO,
ADAM MUNIZ, LEONEL GIRON, KEITH GALLAGHER, GZIM PALAJ,
DANIEL SLEVIN, KEITH HOCKADAY, DANIEL GALLAGHER, ROBERT
CATTANI, CHRISTOPHER RADZINSKI, STEPHEN SPATARO,
*Defendants-Appellees*,

POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK,
INC.,
*Intervenor-Defendant-Appellant*,

and

SERGEANTS BENEVOLENT ASSOCIATION,
*Intervenor*,

v.

JOHN DOES 1-20, JANE DOES 1-20,
*Defendants*.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................1

ARGUMENT ...................................................3

I.   The District Court Misconstrued Rule 41(a)(2) as Requiring It To Ignore the PBA's Interest in Preserving Officer Safety. ................3

    A.   Rule 41(a)(2)'s Text and Binding Precedent Foreclose the District Court's Interpretation. ................3

    B.   The PBA Has Standing. ................6

II.   The District Court's Approval of the Consent Decree Was Infected by Legal Error from Top to Bottom. ................11

    A.   Appellees Cannot Persuasively Defend the District Court's Misreading of *Citigroup*................12

    B.   Appellees Are Wrong that the PBA Seeks a Unilateral Veto over the Settlement. ................16

    C.   Appellees Cannot Salvage the District Court's Mistaken Belief that It Had To Defer to Them when Assessing the Public Interest. ................18

    D.   In All Events, the District Court Erred by Locking in a Radical New Policing Regime Without Even Holding an Evidentiary Hearing. ................21

CONCLUSION ................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
   585 U.S. 579 (2018)..................................................................21

*ACORN v. Edgar*,
   56 F.3d 791 (7th Cir. 1995) ....................................................24

*Arizona v. City of Tucson*,
   761 F.3d 1005 (9th Cir. 2014) .................................................20

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003) ...................................................8, 9

*Bhatia v. Piedrahita*,
   756 F.3d 211 (2d Cir. 2014) .....................................................7

*Bohnak v. Marsh & McLennan Cos.*,
   79 F.4th 276 (2d Cir. 2023) ......................................................8

*Bus. Guides, Inc. v. Chromatic Comm'cns Enters., Inc.*,
   498 U.S. 533 (1991)....................................................................3

*Clark v. AII Acquisition, LLC*,
   886 F.3d 261 (2d Cir. 2018) .....................................................12

*County of Santa Fe v. Pub. Serv. Co.*,
   311 F.3d 1031 (10th Cir. 2002) ..............................................5, 6

*Dairy Queen, Inc. v. Wood*,
   369 U.S. 469 (1962)....................................................................4

*Davis v. N.Y. City Hous. Auth.*,
   166 F.3d 432 (2d Cir. 1999) .....................................................21

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019)..................................................................10

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)..................................................................15

*Fengler v. Numismatic Americana, Inc.*,
  832 F.2d 745 (2d Cir. 1987) ...............................................................23

*Frew ex rel. Frew v. Hawkins*,
  540 U.S. 431 (2004) ...............................................................14, 19

*FTC v. Standard Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987) ...............................................................20

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
  991 F.3d 370 (2d Cir. 2021) ...............................................................11

*Guardians Assoc. of N.Y. City Police Dep't, Inc. v. Civil Serv. Comm'n*,
  490 F.2d 400 (2d Cir. 1973) ...............................................................22

*Hayburn's Case*,
  2 U.S. (2 Dall.) 409 (1792) ...............................................................19

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ...............................................................19

*Hester Indus., Inc. v. Tyson Foods, Inc.*,
  160 F.3d 911 (2d Cir. 1998) ...............................................................22

*Holmberg v. Armbrecht*,
  327 U.S. 392 (1946) ...............................................................12

*Horne v. Flores*,
  557 U.S. 433 (2009) ...............................................................13, 14

*Ibarra v. Tex. Employment Comm'n*,
  823 F.2d 873 (5th Cir. 1987) ...............................................................15

*ITV Direct, Inc. v. Healthy Sols., LLC*,
  445 F.3d 66 (1st Cir. 2002) ...............................................................5

*Janus Films, Inc. v. Miller*,
  801 F.2d 578 (2d Cir. 1986) ...............................................................24

*Jones v. SEC*,
  298 U.S. 1 (1936) ...............................................................4, 5

*Kern v. Clark*,
    331 F.3d 9 (2d Cir. 2003) ................................................................21

*Kozlowski v. Coughlin*,
    871 F.2d 241 (2d Cir. 1989) ...........................................................14

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland*,
    478 U.S. 501 (1986)....................................................................16, 17

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
    957 F.2d 1020 (2d Cir. 1992) .........................................................15

*Melito v. Experian Mktg. Sols., Inc.*,
    923 F.3d 85 (2d Cir. 2019) ...............................................................7

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
    710 F.3d 71 (2d Cir. 2013) ...............................................................9

*Ohlander v. Larson*,
    114 F.3d 1531 (10th Cir. 1997) ........................................................6

*Payne v. City of New York (In re New York City Policing During Summer 2020 Demonstrations)*,
    27 F.4th 792 (2d Cir. 2022) .............................................7, 8, 9, 18

*Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*,
    901 F.3d 105 (2d Cir. 2018) .......................................................3, 26

*Pedreira v. Sunrise Children's Servs., Inc.*,
    79 F.4th 741 (6th Cir. 2023) .............................................................6

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995)..........................................................................19

*United States ex rel. Polansky v. Exec Health Res., Inc.*,
    599 U.S. 419 (2023)............................................................................5

*Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
    88 F.4th 103 (2d Cir. 2023) ..............................................................8

*Schulz v. Williams*,
  44 F.3d 48 (2d Cir. 1994) ...................................................................6

*SEC v. Levine*,
  881 F.2d 1165 (2d Cir. 1989) ...........................................................16

*SEC v. Wang*,
  944 F.2d 80 (2d Cir. 1991) ...............................................................17

*Semmes Motors, Inc. v. Ford Motor Co.*,
  429 F.2d 1197 (2d Cir. 1970) .............................................................3

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944)...........................................................................20

*Smoot v. Fox*,
  340 F.2d 301 (6th Cir. 1964) ..............................................................6

*Spokeo, Inc v. Robins*,
  578 U.S. 330 (2016)..............................................................................7

*Starbucks Corp. v. McKinney*,
  144 S. Ct. 1570 (2024).......................................................................15

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014).............................................................................8

*Texas v. New Mexico*,
  144 S. Ct. 1756 (2024).......................................................................17

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).............................................................................8

*Turkiye Halk Bankasi A.S. v. United States*,
  598 U.S. 264 (2023)...........................................................................13

*U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*,
  673 F.3d 158 (2d Cir. 2012) .............................................................12

*U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*,
  752 F.3d 285 (2d Cir. 2014) ....................................................*passim*

*United States v. Shakur*,
817 F.2d 189 (2d Cir. 1987) ...............................................21

*United States v. Weinlein*,
109 F.4th 91 (2d Cir. 2024) .................................................8

*D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*,
465 F.3d 503 (2d Cir. 2006) ..............................................12

*Zupnick v. Fogel*,
989 F.2d 93 (2d Cir. 1993) ...................................................7

## Rules

Fed. R. Civ. P. 41(a)(2) ...........................................................3

## Other Authorities

Adam Edelman et al., *'Be at the Israeli Consulate Tonight': The Groups Behind One of the DNC's Most Violent Protests*, NBC News (Aug. 22, 2024), https://nbcnews.to/3ZeyqnY ........................11

Elizabeth Elkind, *'Cowardly and Unacceptable': Progressive NYC Dem Condemns Violent Anti-Israel Protest*, Fox News (Aug. 16, 2024), https://fxn.ws/47beWTj ...........................................11

Robert Holden (@BobHoldenNYC), Twitter (Jan. 27, 2024), https://bit.ly/3wzn0iL................................................................9

Michael W. McConnell, *Why Hold Elections? – Using Consent Decrees to Insulate Policies from Political Change*, 1987 U. Chi. Legal Forum 295........................................................................13

Alex Oliveira, *Ferguson Cop Travis Brown Left Fighting for His Life After Violent Protest Is a Father of Two with an 'Infectious Smile'*, N.Y. Post (Aug. 14, 2024), https://bit.ly/4dHuhgJ .............................11

Press Release, ACLU of New York, *NYCLU, The Legal Aid Society, and Attorney General James Announce Agreement with NYPD to Reform Policing of Protests* (Sept. 5, 2023), https://bit.ly/3Uyy2ww ............................................................25

Michael Ruiz, *Chaos Erupts at Kamala Harris NYC Event as DNC Braces for Chicago Unrest*, Fox News (Aug. 16, 2024), https://fxn.ws/4cWJtFF................................................................10, 11

Danielle Wallace, *Emerson College Anti-Israel Agitators Clash with Boston Police; 4 Officers Injured, Over 100 Arrested*, Fox News (Apr. 25, 2024), https://fxn.ws/4gn5IaE............................................10

9 Wright & Miller, *Federal Practice and Procedure* § 2364 (4th ed. 2022) ........................................................................................5

## INTRODUCTION

Appellees defend the judgment below by arguing that the Police Benevolent Association of the City of New York ("PBA") has no cognizable legal interest in this litigation. But this Court has already rejected that argument. That holding is both the law of the case and the law of this Circuit. The district court was thus obliged to carefully consider the interests of the PBA—and of the public—before reflexively dismissing this litigation and imposing a highly detailed federal consent decree on the police practices of New York City.

In arguing the contrary, Appellees largely parrot the district court's errors by glossing over Rule 41(a)(2)'s text and binding precedent, both of which confirm that the district court should have considered the PBA's cognizable interest in officer safety before terminating the case. Appellees also claim that the PBA seeks a "veto" power over the proposed settlement. But that is a straw man. The PBA asked only that the district court genuinely *consider* its interests as an objecting party before dismissing the case. By brushing the PBA's objections aside, the district court shirked that obligation and fundamentally misunderstood the judicial power.

The district court committed the same basic error in deciding to issue the consent decree. Consent decrees lend the contempt and oversight powers of a federal court to arrangements proposed by the parties. And because of that judicial involvement, this Court and others have long held that district courts must exercise

1

their equitable authority to ensure that a consent decree's terms are not unreasonable, inadequate, or prejudicial to the interests of non-settling parties—particularly those who lodge their objections before the court. Appellees argue otherwise by defending the district court's reliance on *Citigroup*, but they ignore that the consent decree there, unlike here, did not adversely affect the interests of anyone but the settling parties. And *Citigroup* itself reiterated that district courts must weigh the unique circumstances of each case when exercising their equitable discretion.

These errors alone require reversal. But the district court committed yet another legal error in its analysis of the public interest. Namely, the court found itself "required" to give such "great deference" to the Settling Parties that the mere fact of settlement was "effectively dispositive" of the inquiry. SA34, 36. By doing so, the district court abdicated its responsibility and let state officials write the terms of a federal injunction. That mistaken view of the law infected the district court's assessment of the public interest. And it led the district court to rubberstamp a consent decree that poses serious safety concerns to police officers, protestors, and the public alike—without ever holding an evidentiary hearing to make factual findings and resolve the stark disagreement among the parties' experts.

Accordingly, this Court should reverse the district court's dismissal, vacate its entry of the consent decree, and remand so that the district court may reassess these matters under the proper standards that it failed to apply.

# ARGUMENT

## I.   The District Court Misconstrued Rule 41(a)(2) as Requiring It To Ignore the PBA's Interest in Preserving Officer Safety.

The Municipal Appellees do not try to defend the district court's untenable interpretation of Rule 41(a)(2).  And the other Appellees fare no better in their attempts to rescue the district court's misreading of the rule.

### A.   Rule 41(a)(2)'s Text and Binding Precedent Foreclose the District Court's Interpretation.

Appellees cannot dispute that courts must "give the Federal Rules of Civil Procedure their plain meaning."  *Bus. Guides, Inc. v. Chromatic Comm'cns Enters., Inc.*, 498 U.S. 533, 540 (1991) (citation omitted).  Yet they make no effort to ground the district court's "plain legal prejudice" standard in Rule 41(a)(2)'s text.

That is because there is no way to do so.  As this Court has recognized, "the language of the Rule is unqualified."  *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 n.7 (2d Cir. 1970).  It affords district courts sweeping discretion to allow dismissal only "on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  And that language means what it says.  It "empowers the district court to either dismiss the case on its own terms or to deny a requested dismissal, if those terms are not met."  *Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*, 901 F.3d 105, 108–09 (2d Cir. 2018).  There is no textual hook for the district court's view that it could

consider only whether the PBA would suffer the loss of a "legal claim, cause of action or contract right[]." SA14 (citation omitted).

Perhaps recognizing this misstep, the State submits that "the district court did not hold that legal prejudice is necessarily limited to loss of a legal claim, cause of action, or contract right." State Br. at 18. But that is precisely what the district court held. In its view, "[n]o legal prejudice exists *unless* a non-settling defendant will lose a 'legal claim, cause of action or contract rights,'" and the court believed it could assess only "whether dismissal pursuant to the Settlement will subject [the PBA] to 'legal prejudice,' *as that term is defined above*." SA14–17 (emphases added; citation omitted).

That blinkered approach flouts Rule 41(a)(2) and finds no support in this Court's precedent. Appellees rely largely on the same decisions invoked by the court below. *See* State Br. at 17–20; Payne Br. at 25–29. Yet as explained in the Opening Brief, many of those decisions do not even address Rule 41(a)(2), and the few that mention the rule do not purport to define the full scope of the district court's inquiry. *See* Opening Br. at 28–30. They simply addressed the unique facts of the cases that were then before this Court.

The State also reaches back to *Jones v. SEC*, 298 U.S. 1 (1936), but that case predated the 1938 adoption of the Federal Rules of Civil Procedure, *see Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 471 (1962). The Court therefore had no occasion

4

to interpret Rule 41(a)(2). And even by its own terms, *Jones* professed only to set forth a "general" rule. 298 U.S. at 19. The State does not explain why that decision should apply here.

On the contrary, the Supreme Court more recently has confirmed that "[p]art of the district court's task" when ruling on a Rule 41(a)(2) motion "is to consider th[e] interests" of the parties before it—and to "'endeavor to ensure that substantial justice is accorded to *all* parties.'" *United States ex rel. Polansky v. Exec Health Res., Inc.*, 599 U.S. 419, 437 (2023) (emphasis added) (quoting 9 Wright & Miller, *Federal Practice and Procedure* § 2364 (4th ed. 2022)). The district court refused to heed that command, concluding that the PBA had no "right to object" even if dismissal would "injure[] the very interest that intervention was meant to protect." SA16, 19.

The State next suggests that Rule 41(a)(2) categorically forbids a district court from denying a motion to voluntarily dismiss with prejudice. *See* State Br. at 16–17. "But there will be circumstances" like these "where granting a plaintiff's motion to dismiss with prejudice may adversely affect the defendant or, more likely, other parties to the litigation." *County of Santa Fe v. Pub. Serv. Co.*, 311 F.3d 1031, 1049 (10th Cir. 2002). Those objecting parties may not be ignored. Thus, "as other cases make clear, a third-party intervenor's interests should also be considered," regardless of whether the proposed dismissal is with prejudice. *ITV Direct, Inc. v. Healthy*

*Sols., LLC*, 445 F.3d 66, 70–71 (1st Cir. 2002) (upholding district court's refusal to allow voluntary dismissal with prejudice); *see County of Santa Fe*, 331 F.3d at 1049 (reversing district court's order granting voluntary dismissal with prejudice). The State overlooks these authorities in favor of *Smoot v. Fox*, 340 F.2d 301, 302 (6th Cir. 1964). Yet "*Smoot* had no need to address asserted third-party interests in its read of Rule 41(a)(2)," and so the Sixth Circuit has itself clarified that courts must always remain cognizant of third-party interests when conducting their analysis. *Pedreira v. Sunrise Children's Servs., Inc.*, 79 F.4th 741, 750–51 (6th Cir. 2023).

The district court refused to do so here. That failure to give the PBA's concerns "the attention deserved" or "to consider the novelty of the circumstances surrounding this case" amounts to legal error. *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). And the district court's misconception of the proper legal standard requires reversal as a matter of law.

### B. The PBA Has Standing.

The Municipal Appellees take a different tack, arguing that the district court's "formal legal prejudice" standard defines, not the Rule 41(a)(2) inquiry, but this Court's Article III jurisdiction. *See* Municipal Br. at 1, 15–18. That, too, is incorrect.

The PBA may appeal if it "satisf[ies] the well-established requisites of Article III." *Schulz v. Williams*, 44 F.3d 48, 52 (2d Cir. 1994). Even the Municipal

6

Appellees' own authority underscores this point. In *Bhatia v. Piedrahita*, for example, this Court reiterated the three elements of injury-in-fact, causation, and redressability "by which the 'irreducible constitutional minimum of standing' is established." 756 F.3d 211, 217–18 (2d Cir. 2014) (citation omitted). And while this Court noted that a non-settling defendant "generally" will not meet this standard absent "formal legal prejudice" because it will "ordinarily" not be affected by the settlement, it did not hold that "formal legal prejudice" was always required. *Id.* at 218. That is merely a general rule. *See id.*; *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 91 (2d Cir. 2019); *see also Zupnick v. Fogel*, 989 F.2d 93, 98 (2d Cir. 1993) ("*Usually*, a nonsettling defendant lacks standing to object to a court order approving a partial settlement because a nonsettling defendant is *ordinarily* not affected by such a settlement." (emphases added)).

As the PBA explained, this case presents the exception that proves the general rule. *See* Opening Br. at 28–29. No one disputes that the PBA has satisfied the causation and redressability elements of Article III standing. *See id.* at 29; *Spokeo, Inc v. Robins*, 578 U.S. 330, 338 (2016). Nor can anyone seriously dispute that the PBA's interest in preserving the physical safety of its members is a concrete and "legally protectable interest." *Payne v. City of New York (In re New York City Policing During Summer 2020 Demonstrations)*, 27 F.4th 792, 799 (2d Cir. 2022). Indeed, "physical harms . . . 'readily qualify as concrete injuries under Article III.'"

7

*Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 284 (2d Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). And the PBA has from the beginning "introduced evidence that officers suffered injuries during interactions with protesters because of policies governing the rules of engagement." *Payne*, 27 F.4th at 802. The "chaotic and dangerous" protests that spawned this very litigation led to "more than 400" assaults on NYPD officers, with "some suffering severe injuries." JA356.

The Municipal Appellees' real contention appears to be that the PBA has not established a sufficient likelihood of these concrete injuries recurring. *See* Municipal Br. at 18–20. But Article III does not demand mathematical certainty of impending injury; there need only be a "'substantial risk' that the harm will occur." *Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 111 (2d Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Thus, this Court has repeatedly held that "even 'threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes.'" *United States v. Weinlein*, 109 F.4th 91, 97 (2d Cir. 2024) (citation omitted). It has similarly emphasized that "'standing to appeal can be supported by abstract or slight injuries,' including 'probabilistic injury.'" *Id.* (citation omitted). And it has made clear that the "probability" required to invoke federal jurisdiction "logically varies with the severity of the probable harm." *Baur*

8

*v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003). The "more drastic the injury," the "lesser the increment in probability necessary to establish standing." *Id.* (citation omitted); *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 81 (2d Cir. 2013).

The PBA readily satisfies these standards. The threatened physical harm to its member officers who serve the people of New York City is unquestionably severe. This Court recognized as much in granting the PBA's request to intervene. *See Payne*, 27 F.4th at 799–800. And the PBA supported the substantial risks of harm posed by the consent decree with the expert testimony of Chief Anemone. JA425–38, 976–80; *see Nat. Res. Def. Council*, 710 F.3d at 84 (relying on expert declaration). Chief Anemone recognized these "acute risks to the safety of police officers" based on his 35 years of experience and participation in responding to over 350 public protests during his time serving in the NYPD. JA425. And City officials have likewise warned that allowing the consent decree to take effect would "jeopardize the safety of the public and [NYPD] officers." Robert Holden (@BobHoldenNYC), Twitter (Jan. 27, 2024), https://bit.ly/3wzn0iL; *see also* JA983 (Mayor Adams pronouncing that "[a]nyone who polices this city should be concerned about what's in the settlement").

Ignoring this evidence, the Municipal Appellees suggest that the threat of physical injury or death caused by third-party protestors is "insufficient to establish

standing." Municipal Br. at 19–20. But the consent decree directly impacts what the PBA's members can do to protect themselves by managing a situation and preventing unlawful behavior from escalating into violence. And "[s]oft-on-crime" policies predictably "embolden agitators and those looking to incite riots during protests." Michael Ruiz, *Chaos Erupts at Kamala Harris NYC Event as DNC Braces for Chicago Unrest*, Fox News (Aug. 16, 2024), https://fxn.ws/4cWJtFF (quoting retired NYPD lieutenant); *see* JA433–37.[1] That in turn "[p]resents a significant risk of serious injury to police officers." JA426; *see* JA433–37, 978–79. The PBA's standing theory thus relies directly upon how the consent decree will influence the actions of its member officers and "on the predictable effect" of the consent decree "on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Article III does not demand more. *See id.*

Simply put, the consent decree promotes the sort of riotous protests that have significantly disrupted New York City and other cities in recent years. *See* Opening Br. at 38–42. And, in this increasingly polarized political climate, such disruptions

---

[1] The Municipal Appellees assert that the City of Boston has tried to minimize initial police presence at largescale protests. *See* Municipal Br. at 6–7; *see also* State Br. at 33. The district court did not make any factual findings on the experience of other cities, and in fact, that reactive approach has not stopped those inherently volatile protests from devolving into violence. *See* Danielle Wallace, *Emerson College Anti-Israel Agitators Clash with Boston Police; 4 Officers Injured, Over 100 Arrested*, Fox News (Apr. 25, 2024), https://fxn.ws/4gn5IaE.

and violence have continued even as the parties brief this appeal. *See, e.g.*, Ruiz, *supra*; Elizabeth Elkind, *'Cowardly and Unacceptable': Progressive NYC Dem Condemns Violent Anti-Israel Protest*, Fox News (Aug. 16, 2024), https://fxn.ws/47beWTj; *see also* Alex Oliveira, *Ferguson Cop Travis Brown Left Fighting for His Life After Violent Protest Is a Father of Two with an 'Infectious Smile'*, N.Y. Post (Aug. 14, 2024), https://bit.ly/4dHuhgJ; Adam Edelman et al., *'Be at the Israeli Consulate Tonight': The Groups Behind One of the DNC's Most Violent Protests*, NBC News (Aug. 22, 2024), https://nbcnews.to/3ZeyqnY. As a result, "serious risks of injury to police officers trying to implement this Proposed Settlement can be expected to occur." JA434. That suffices to confer standing.

## II. The District Court's Approval of the Consent Decree Was Infected by Legal Error from Top to Bottom.

Appellees similarly cannot defend the process by which the district court considered the consent decree. They and their amici spend much of their time trying to defend the merits of the decree. But the district court's stamp of approval was premised on several legal errors. That means the entry of the consent decree is "functionally reviewed *de novo*, as a decision premised on a legal error is necessarily an abuse of discretion." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 380 (2d Cir. 2021). And because the district court "applied the wrong standard in evaluating" whether to enter the consent decree, this Court must vacate

and remand "for reconsideration utilizing the proper standard." *D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*, 465 F.3d 503, 515 (2d Cir. 2006).

### A. Appellees Cannot Persuasively Defend the District Court's Misreading of *Citigroup*.

Start with the district court's misunderstanding of *Citigroup*. Appellees do not dispute that the district court treated *Citigroup*'s "minimum" requirements as an exhaustive checklist. *U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 294–95 (2d Cir. 2014). And while they insist that the district court "faithfully applied" those minimum requirements, Payne Br. at 17; *see* State Br. at 25–26, they studiously ignore the fact that "the terms of the [*Citigroup*] settlement [did] not have an adverse impact on anyone," *U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*, 673 F.3d 158, 166 n.5 (2d Cir. 2012) (per curiam).

That is not the case here, and the distinction matters. After all, "[e]quity eschews mechanical rules." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). And to that end, *Citigroup* specifically admonished that "a district court may need to make additional inquiry to ensure that the consent decree is fair and reasonable." 752 F.3d at 295.

Indeed, even if this Court had not done so explicitly, there would be no reason to treat *Citigroup*'s minimum requirements for "evaluating a proposed S.E.C. consent decree" with a settling defendant as constraining a court's equitable

authority to scrutinize other consent decrees that require the ongoing supervision of municipalities. *Id.* at 294. *Citigroup*'s "general language" must—as with all judicial opinions—be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023) (citation omitted). As the PBA has explained, the circumstances here differ materially from *Citigroup*. *See* Opening Br. at 35–37.

The Payne Appellees also suggest that a federal judge can lock in and oversee a novel state regime through a consent decree without any finding that the previous policies tended to produce violations of federal law. *See* Payne Br. at 22. Yet "consent decrees present a risk of collusion between advocacy groups and executive officials who want to bind the hands of future policymakers." *Horne v. Flores*, 557 U.S. 433, 449 (2009) (citation omitted). That is, "government officials may try to use consent decrees to 'block ordinary avenues of political change' or to 'sidestep political constraints.'" *Id.* at 448 (quoting Michael W. McConnell, *Why Hold Elections? – Using Consent Decrees to Insulate Policies from Political Change*, 1987 U. Chi. Legal Forum 295, 317). For that reason, federal courts must limit such decrees aimed at institutional reform "to reasonable and necessary implementations of federal law"—in order to avoid "improperly depriv[ing] future [state] officials of

13

their designated legislative and executive powers." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004). The district court's contrary approach presents serious federalism concerns that *Citigroup* had no occasion to address. *See* Opening Br. at 36–37; *Horne*, 557 U.S. at 448–49.[2]

Moving away from *Citigroup*, the Payne Appellees fault the PBA for not addressing the "*Kozlowski* standard." Payne Br. at 16 & n.4. But that is because the district court "evaluate[d] the Settlement/consent decree using the *Citigroup* standard." SA25. And regardless of the district court's dicta regarding *Kozlowski*, that does not alter the fact that the district court applied an erroneous legal standard when issuing the consent decree. Moreover, to the extent the Payne Appellees mean to suggest (unlike the other Appellees) that *Kozlowski v. Coughlin*, 871 F.2d 241 (2d Cir. 1989), supports the standard adopted by the district court, it does not. *Kozlowski* simply reiterated the remedial limits of a district court's equitable powers to issue a consent decree. *See id.* at 244. It did not purport to set a floor above which a district

---

[2] Contrary to the State's suggestion, conducting a proper equitable inquiry here would not "require[]" the district court "to override the decisions of state officials." State Br. at 29 (citation omitted). It would simply require the court to exercise a measure of independent judgment before placing its power and prestige behind the settlement and "engag[ing] in extensive oversight and involvement" in its execution. SA9. That makes sense. If state officials "prefer[] to call upon the power of the [federal] courts in ordering a consent decree and issuing an injunction" to entrench their preferred policies of the moment—thereby taking those issues away from the voters—then they, like all other litigants, "must be willing to assure the court that the settlement proposed is fair and reasonable." *Citigroup*, 752 F.3d at 297.

court *must* approve a consent decree, let alone over the objections of a party to the proceeding.

Appellees also try to distance themselves from the equitable standards for permanent injunctions set forth in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). *See* Payne Br. at 21; State Br. at 27; Municipal Br. at 27 & n.5. But they do not dispute that this consent decree, like any other, provides permanent injunctive relief. And *Citigroup* itself applied "the traditional principles of equity [*eBay*] employed" as "the presumptive standard for injunctions in any context." 752 F.3d at 296 (citation omitted); *see also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024). Appellees provide no basis to rebut that presumption or discard this Court's precedent and historical practice.

In short, the district court ignored basic principles of equity. Those cross-cutting principles make clear that when parties "complain to a judge that a 'decree will be inequitable because it will harm them unjustly, [the judge] cannot just brush their complaints aside.'" *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) (citation omitted). She must always be "cognizant of and sensitive" to the unique equitable considerations of each case. *Ibarra v. Tex. Employment Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987). And her review is not, as the State insists, "highly constrained." State Br. at 26. She may instead "disapprove" a proposed consent decree "unless a certain term that [she]

15

thought appropriate were included." *SEC v. Levine*, 881 F.2d 1165, 1181 (2d Cir. 1989). This Court should remand so that the district court can review the proposed consent decree through this lens, unsullied by its mistaken view of the law.

### B. Appellees Are Wrong that the PBA Seeks a Unilateral Veto over the Settlement.

Left with no foothold in precedent, Appellees attempt to burn a straw man. They argue that the PBA seeks "veto power" to block any settlement that others may propose. Payne Br. at 3, 16, 30; *see* Municipal Br. at 21, 24, 28; State Br. at 2, 23–24. But that is incorrect. The PBA instead believes that "the district court misread the law as requiring the approval of a settlement and the issuance of a consent decree without any serious consideration of the PBA's objections." Opening Br. at 19; *see also id.* at 2–4, 23, 26, 30–31, 33, 36–37. There is a marked difference between carefully weighing the PBA's evidence and objections and what the district court did below.

Appellees' reliance on *Local Number 93, International Association of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986) ("*Firefighters*"), is accordingly misplaced. *See* Payne Br. at 18–19; Municipal Br. at 21–22, 24–25; State Br. at 23–24. If anything, *Firefighters* underscores the district court's mistakes. There, the Supreme Court confirmed that a non-settling intervenor is entitled to "have its objections heard" and "carefully considered" by the court. 478 U.S. at 529. The PBA thus tried to assert these rights and expressed its concerns

regarding the proposed consent decree. Yet far from providing "careful[] consider[ation]" to the PBA's evidence and objections, *id.*, the district court declared that the PBA's concerns regarding the fairness, reasonableness, and adequacy of the consent decree "will not be considered," SA31.

Appellees get no further with *Texas v. New Mexico*, 144 S. Ct. 1756 (2024). That case reiterated that a nonconsenting intervenor "is entitled to present evidence and have its objections heard." *Id.* at 1764–65 (citation omitted). And insofar as LEAP and the Payne Appellees suggest that *Texas v. New Mexico* limits courts to rejecting a proposed consent decree only if it would dispose of an objecting party's claims or impose obligations upon that party, *see* LEAP Br. at 6, 13; Payne Br. at 19, that confuses a sufficient condition with a necessary one. The Supreme Court found the effect on third-party claims sufficient to reject the consent decree proposed in that case. *See Texas*, 144 S. Ct. at 1771–72. Yet nowhere did it purport to cabin a federal judge's power to reject a proposed decree if she otherwise finds the terms "unfair, inadequate, or unreasonable" to any party concerned. *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991) (citation omitted). At any rate, this consent decree *does* impose obligations on the PBA's members, as they now must adhere to its troubling terms while belatedly responding to volatile protests on the front lines.[3]

---

[3] LEAP spends the bulk of the rest of its brief arguing that the PBA does not have policymaking authority in its capacity as a collective bargaining unit. *See* LEAP Br.

C.    **Appellees Cannot Salvage the District Court's Mistaken Belief that It Had To Defer to Them when Assessing the Public Interest.**

That leaves Appellees to hang their hats on the district court's passing consideration of the public interest. The public interest is only one factor in the equitable analysis. *See Citigroup*, 752 F.3d at 296 & n.1. So the district court's treatment of that factor cannot excuse its legal errors in the broader inquiry.

Even within this factor, though, the district court misunderstood the law. It wrongly believed that the PBA's arguments and evidence were "not properly considered under *Citigroup*." SA36. And to the extent it analyzed the public interest at all, the court built its assessment on the sands of an erroneous premise—that so long as the Settling Parties found the decree "acceptable," their signoff was "effectively dispositive" of the public-interest inquiry. SA34.

*Citigroup* does not support such a "dereliction of the court's duty to ensure the orders it enters are proper." 752 F.3d at 298. There, this Court held that judges should generally defer to the SEC on matters of enforcement discretion. *See id.* at 296–97. Even with that caveat, however, the Court remanded for the district court

---

at 14–23. Yet this Court has already held that the PBA's "interest in officer safety is not limited to the PBA's collective-bargaining rights and is independently cognizable." *Payne*, 27 F.4th at 801. And LEAP does not explain how its "collective bargaining" argument bears on the appropriate standard for entering a consent decree—because it does not. *See* Opening Br. at 46–47.

to independently "consider whether the public interest would be disserved by entry of the consent decree." *Id.* at 297.

It could hardly be otherwise. To allow the say-so of political officials—and particularly state political officials—to dictate the terms of federal judicial decrees would be "radically inconsistent with the independence of that judicial power which is vested in the courts." *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226 (1995) (quoting *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 411 (1792) (opinion of Wilson and Blair, JJ., and Peters, D.J.)). There is no basis in law, logic, or historical practice for such a conscription of the federal judiciary. *See, e.g.*, *Hecht Co. v. Bowles*, 321 U.S. 321, 329–31 (1944). And there is certainly not on the facts of this case. Unlike in *Citigroup*, a union representing 21,000 NYPD officers has urged that this consent decree would disserve the public interest. *See* Opening Br. at 43. The PBA's concerns have also been echoed by the public statements of several New York City leaders—from the City's Mayor to a bipartisan caucus of City Council members. *See id.* at 40–41, 44.

And unlike in *Citigroup*, Appellees cannot point to a single *federal* official who has endorsed the Settling Parties' radical new regime. *Cf. Frew*, 540 U.S. at 437 ("Consent decrees entered in federal court must be directed to protecting federal interests."). The contrary views of the Settling Parties as to the decree's merits may warrant some respect, but they are far from controlling as to the propriety of the

consent decree. The "true measure of the deference due depends" not on the Settling Parties' mere acceptance of the proposed terms, but "on the persuasive power of [their] proposal and rationale, given whatever practical considerations may impinge and the full panoply of the attendant circumstances." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Once again, then, the district court's mechanical extension of *Citigroup* was flawed. Even if *Citigroup* compels a measure of deference to the SEC on certain settlement matters, federal courts must "not defer to the state to the same degree as [they] would the federal government." *Arizona v. City of Tucson*, 761 F.3d 1005, 1014 (9th Cir. 2014). The district court violated these principles. And because it "applied the wrong deferential standard of review in assessing the consent decree[]," this Court "must hold that the [district] court abused its discretion for that reason alone." *Id.* at 1014 n.7.

That legal error also infected the rest of the court's public-interest analysis. Appellees urge that the consent decree's effect on public and officer safety "was weighed" in the district court's discussion. Payne Br. at 31; *see* State Br. at 30. But the court declined to give those countervailing interests a fair shake based on its misimpression that it was "required" to give "great deference" to the Settling Parties. SA36. With that heavy thumb placed on the scale in favor of approval, the court

20

believed that even the expert opinion of a decorated former NYPD Chief of Police could not provide a "substantial basis" to "overcome" that improper deference as a matter of law. *Id.* Any ultimate finding the court made was thus "'predicated on a misunderstanding of the governing rule of law'" and "cannot stand." *Abbott v. Perez*, 585 U.S. 579, 607 (2018) (citation omitted); *see also United States v. Shakur*, 817 F.2d 189, 197 (2d Cir. 1987) ("[T]he court's ultimate finding may be subject to plenary review if it rests on a predicate finding which reflects a misperception of a legal rule applicable to the particular factor involved.").

Add it all up, and the district court's legal error regarding the public-interest analysis provides yet another, independent reason to vacate and remand.

### D. In All Events, the District Court Erred by Locking in a Radical New Policing Regime Without Even Holding an Evidentiary Hearing.

The district court's errors did not stop there. Appellees do not contest that Chief Anemone's opinion stood in "direct contradiction" to Chief Aden's. SA37. And this Court's precedent is clear that "[t]he existence of factual disputes necessitates an evidentiary hearing" before a district court may issue injunctive relief. *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) (citation omitted); *see also, e.g.*, *Davis v. N.Y. City Hous. Auth.*, 166 F.3d 432, 437–38 (2d Cir. 1999). The district court nevertheless forged ahead to rubberstamp the consent decree—which it recognized "'is tantamount to a mandatory injunction'" and could subject "part[ies]

21

to citation[s] for contempt"—without holding an evidentiary hearing to resolve these critical factual disputes. SA21 (quoting *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998)).

The State tries to excuse this error by insisting that "the existing record is sufficient to resolve the motion without an evidentiary hearing." State Br. at 35. But that conclusory argument is belied by the record. "[A]n affidavit of a competent expert [will] ordinarily be enough to call for an evidentiary hearing." *Guardians Assoc. of N.Y. City Police Dep't, Inc. v. Civil Serv. Comm'n*, 490 F.2d 400, 403 (2d Cir. 1973). And here, the PBA submitted two affidavits from Chief Anemone, who the district court properly regarded as an expert. SA10; *see* JA425–38, 976–80. Based on 35 years of field experience with the NYPD and over two decades of consulting and teaching experience to boot, Chief Anemone rightly concluded that approval of the consent decree would "jeopardize the safety of officers, protestors, and the public." JA425, 434, 977.[4]

Chief Aden may have felt differently. But unlike Chief Anemone, he lacked any experience with the NYPD, and neither he nor Appellees have "identif[ied] any

---

[4] The Payne Appellees are simply wrong to assert that Chief Anemone did not "provide any indication that he has kept current with protest policing best practices." Payne Br. at 39. In a sworn affidavit, Chief Anemone specifically declared that his two decades of "consulting and teaching experiences since [his] retirement have required that [he] keep abreast of the most recent learning and practices with respect to the policing of protests." JA977.

jurisdiction that has adopted the type of structure contemplated by the Proposed Settlement, let alone any city with the size, density, population, and/or complexity as New York City."  JA978; *see* Progressive Caucus Br. at 1 (conceding that New York City is "unlike anywhere else" (citation omitted)).

The district court should not have resolved this classic battle of the experts without holding an evidentiary hearing.  In fact, Appellees fail to identify a single instance of another court entering a consent decree without such a hearing in the face of conflicting expert evidence that the decree would harm the public interest.  The district court appears to have taken this unprecedented approach only to confirm its mistaken view that it "should indeed defer" to the Settling Parties.  SA34.

Appellees also contend that the PBA somehow waived an evidentiary hearing to resolve any factual disputes regarding the public interest.  *See* State Br. at 34; Municipal Br. at 25; Payne Br. at 23–24.  However, a party "will be found to have waived its right to a hearing only where that party was demonstrably 'content to rest' on affidavits submitted to the court."  *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 748 (2d Cir. 1987) (citation omitted).  That was not the case here.

In suggesting otherwise, Appellees note that the PBA did not ask for an evidentiary hearing when it submitted its objections.  *See* Payne Br. at 23–24; State Br. at 34.  But at that time, the evidence was entirely one-sided:  Without Chief Aden's opinion in the record, the PBA argued that "the flaws in the settlement are

established by indisputable facts," and "Chief Anemone's Declaration [was] sufficient to warrant *rejection* of the Proposed Settlement without a hearing." JA449–50 (emphasis added).  The PBA thus argued that the district court could credit that evidence and refuse to approve the settlement without a hearing.

The PBA never argued that the district court could reject its evidence and *approve* the settlement without an evidentiary hearing, and Appellees cite no evidence to the contrary.  By analogy, a party's motion for summary judgment is a clear statement that the movant believes that the case may be resolved without trial. But it is hardly an invitation for the district court to grant summary judgment against the movant without conducting any trial at all.  The PBA similarly did not invite the district court to resolve a battle of the experts without any evidentiary hearing.

In any case, the district court's refusal to hold an evidentiary hearing ignored the "larger role" it must play in "any suits 'affecting the public interest.'"  *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986) (citation omitted); *see also ACORN v. Edgar*, 56 F.3d 791, 797 (7th Cir. 1995) (refusing to treat argument as waived because matters "relate[d] to the propriety or scope of an injunction" may be raised even "on the court's own initiative").  The district court abdicated that responsibility by reflexively deferring to the Settling Parties.  As a result, it uncritically foisted a novel policing experiment upon the public—with the force and

rigidity of a judicial decree—that will imperil the City, those who protect it, and those who call it home, for years to come.

Appellees try to wave away the novelty of the consent decree. *See* Payne Br. at 7–8, 40 n.11, 41, 43; State Br. at 7, 14, 31; Municipal Br. at 5–7, 29. But counsel for the Payne Plaintiffs has touted that it "represents a novel approach to policing protests." Press Release, ACLU of New York, *NYCLU, The Legal Aid Society, and Attorney General James Announce Agreement with NYPD to Reform Policing of Protests* (Sept. 5, 2023), https://bit.ly/3Uyy2ww. And LEAP has similarly deemed the district court's order "a landmark consent decree that would transform the way the NYPD responds to protests." LEAP Br. at 2 (footnote omitted).

Moreover, neither Appellees nor their amici meaningfully try to analogize the rigid tiers codified in the consent decree to any approach adopted anywhere else in the country. And the same goes for the Red Light/Green Light policy. Even if certain commanders had employed it before, it has never been a citywide NYPD policy, and the "serious misdemeanors or felonies" set forth in the consent decree that place the "public safety . . . in danger" were not previously considered "Red Light" offenses requiring approval from a captain or above. *See* JA936–40; Opening Br. at 39–40 (detailing "Red Light" offenses in the consent decree, from riot to criminal trespass with a deadly weapon). Thus, Appellees have no basis to suggest that the consent decree embodies "nationally accepted policing practices."

25

Municipal Br. at 4. As before, they do "not identify any jurisdiction" that has embraced the consent decree's radical approach, JA978, much less any jurisdiction that has done so with the unbending force of a consent decree.

* * *

Unable to defend the district court's legal errors, Appellees and their amici retreat to defending the merits of the settlement. *See* Payne Br. at 34–44; State Br. at 31–33; Municipal Br. at 29; Progressive Caucus Br. at 3–10; LEAP Br. at 2, 25; LatinoJustice Br. at 17–31.[5] But ultimately that is a question for another day. Even if the district court could properly enter the consent decree after applying the proper standards and conducting a proper hearing, it no doubt could have reached the opposite conclusion by crediting the expert opinion of Chief Anemone. This Court "cannot responsibly decide that an error is harmless by guessing which of these, or other, potential outcomes would most likely have occurred had the district court chosen other paths than the one it did." *Paysys*, 901 F.3d at 110. A remand is therefore necessary for the district court to apply the appropriate standards. *See, e.g.*, *Citigroup*, 752 F.3d at 297–98.

---

[5] LatinoJustice's unabashed reliance on "extra-record materials" only highlights the paucity of record evidence supporting the consent decree. LatinoJustice Br. at 2.

26

## CONCLUSION

The Court should reverse the district court's dismissal, vacate its entry of the consent decree, and remand for further proceedings.

Respectfully submitted,

/s/ Steven A. Engel

| | |
|---|---|
| BRIAN A. KULP | STEVEN A. ENGEL |
| DECHERT LLP | DECHERT LLP |
| Cira Centre | Three Bryant Park |
| 2929 Arch Street | 1095 Avenue of the Americas |
| Philadelphia, PA 19104 | New York, NY 10036 |
| Tel: (215) 994-2290 | Tel: (212) 698-3512 |
| brian.kulp@dechert.com | steven.engel@dechert.com |

*Counsel for Intervenor-Defendant-Appellant*
*Police Benevolent Association of the City of New York, Inc.*

# CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of 2d Cir. R. 32.1(a)(4)(B) because it contains 6,620 words, excluding those portions of the Brief exempted by Fed. R. App. P. 32(a)(7)(B). The Brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-pt font.

Dated: September 26, 2024

/s/ Steven A. Engel
STEVEN A. ENGEL
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3512
steven.engel@dechert.com

*Counsel for
Intervenor-Defendant-Appellant
Police Benevolent Association of the
City of New York, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2024, I caused the foregoing Brief to be filed using the Second Circuit ACMS system, which automatically served all parties registered with the electronic filing system. I also caused an electronic copy to be sent via email to the Court's email address (civilcases@ca2.uscourts.gov), and six paper copies of the Brief were sent to the Clerk's Office by overnight mail.

Dated: September 26, 2024

*/s/ Steven A. Engel*
STEVEN A. ENGEL
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3512
steven.engel@dechert.com

*Counsel for*
*Intervenor-Defendant-Appellant*
*Police Benevolent Association of the*
*City of New York, Inc.*